**No. _____**

---

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

---

In re ATTORNEYS PETER TICKTIN and STEFANIE LAMBERT,

***Petitioners,***

---

ON PETITION FOR A WRIT OF MANDAMUS TO THE UNITED STATES DISTRICT
COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

Relates to Case No.: CV 2:23-09430-SVW,
HON. STEPHEN V. WILSON

---

**PETITION FOR A WRIT OF MANDAMUS
TO THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION
AND
MOTION FOR STAY PENDING CONSIDERATION OF PETITION**

---

Submitted by,

THE TICKTIN LAW GROUP
Roger I. Roots, Esquire
Counsel for Petitioners
270 SW Natura Avenue
Deerfield Beach, Florida 33441
Phone: (561) 232-2222
Email: Serv512@legalbrains.com

## CERTIFICATE OF INTERESTED PARTIES AND DISCLOSURE

Pursuant to Fed. R. App. P. 26.1 and Local Rule 26.1, the following is a complete list of all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the particular case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of a party's stock, and other identifiable legal entities related to a party:

- Court – United States District Judge Stephen V. Wilson, for the Central District of California, Western Division

- Plaintiff – Robert Hunter Biden

- Petitioners – Attorneys Peter Ticktin, Esquire and Stefanie Lambert, Esquire

- Defendant – Patrick M. Byrne

## RULE 27-3 CERTIFICATE

Pursuant to Circuit Rule 27-3(a), I hereby certify that to avoid irreparable harm to Petitioners and to the constitutional rights of Defendant, who is Petitioners' client in the underlying case, relief is needed in less than 21 days' time.

Plaintiff has filed a "bench warrant" for the arrest of Dr. Byrne, despite the fact the District Court continued the case until October 15, 2025, and despite the fact that Dr. Byrne is unrepresented by counsel, a fact of which Plaintiff's attorneys in the underlying case are well aware.

Regarding Circuit Rule 27-3(a)(1), Petitioners notified the Clerk and counsel for the parties on September 15, 2025, of their intent to file this mandamus petition and emergency motion. The just-finalized petition and motion are being served simultaneously with filing via email to the counsel's below stated address. Regarding Circuit Rule 27-3(a)(3)(i), counsel are as follows:

**Counsel for Petitioner / Defendant:**

- Peter Ticktin, Esquire
  The Ticktin Law Group
  Counsel for Petitioners
  270 SW Natura Ave.
  Deerfield Beach, FL 33441
  Phone: (561) 232-2222
  Serv512@legalbrains.com

**Counsel for Plaintiff / Respondent:**

- Bryan M Sullivan
  Early Sullivan Wright Gizer and McRae LLP
  6420 Wilshire Boulevard 17th Floor
  Los Angeles, CA 90048
  Phone: 323-301-4660
  Fax: 323-301-4676
  Email: bsullivan@earlysullivan.com

iii

- Phillip D. Barber
  Richard A. Harpootlian, P.A.
  1410 Laurel Street
  Columbia, SC 29201
  Phone: 803-252-4848
  Email: pdb@harpootlianlaw.com
  *PRO HAC VICE*

- Richard A. Harpootlian
  Richard A. Harpootlian, P.A.
  1410 Laurel Street
  Columbia, SC 29201
  Phone: 803-252-4848
  Email: rah@harpootlianlaw.com
  *PRO HAC VICE*

- Zachary Hansen
  Early Sullivan Wright Gizer and McRae LLP
  6420 Wilshire Boulevard 17th Floor
  Los Angeles, CA 90048
  Phone: 323-301-4660
  Fax: 323-301-4676
  Email: zhansen@earlysullivan.com

**Counsel for Mediator:**

- Dennis James Landin
  ADR Services, Inc.
  1900 Avenue of the Stars, #200
  Los Angeles, CA 90067
  310-201-0010
  Email: judgelandin@adrservices.com

Regarding Circuit Rule 27-3(a)(3)(ii), the facts showing the existence and nature of the claimed emergency are set forth in detail below in the Introduction (pp. 1-5) and in the Discussion (pp. 5-19). In brief, the Petitioners respectfully request emergency relief in this matter because the error in question was a ruling which disallowed two highly qualified trial attorneys, knowledgeable in subject matter which is unknown by most attorneys, who are in good standing within their own

iv

jurisdictions to appear and practice before the District Court at the request of Defendant, Dr. Byrne, to represent him and defend him in this defamation claim seeking tens of millions of dollars in recovery. The Defendant has no counsel of record and yet the case is proceeding in this matter. Further, on September 13, 2025, Plaintiff's counsel in the underlying case has applied for issuance of a "bench warrant" against Dr. Byrne, even though the case had been continued until October 15, 2025.

An emergency stay is also being sought for these reasons. The continuation of this case without Defendant's counsel of choice representing him is a severe violation of his constitutional rights.

Regarding Circuit Rule 27-3(a)(3)(iii), the Plaintiff's counsel was notified via email on September 15, 2025 of Petitioners' intent to file this mandamus petition and emergency motion. Counsel is being served with the just-finalized petition and motion simultaneously with filing via email to counsel's above stated addresses.

Regarding Circuit Rule 27-3(a)(4), as set forth in the Statement of Facts below, the Petitioners have sought and have been denied relief from the district court. Judge Wilson's rulings disqualifying Petitioners and preventing them from representing the Defendant results in his inability to have his counsel of choice, who are experts on the rarely known or understood subject matter.

## STATEMENT OF SUBJECT MATTER JURISDICTION

This Court has jurisdiction over this Petition pursuant to the All Writs Act, 28 U.S.C. § 1651 and Rule 21 of the Federal Rules of Appellate Procedure.

## TABLE OF CONTENTS

**CERTIFICATE OF INTERESTED PARTIES AND DISCLOSURE**..........................ii

**RULE 27-3 CERTIFICATE** ....................................................................iii

**STATEMENT OF SUBJECT MATTER JURISDICTION** ........................... vi

**TABLE OF AUTHORITIES**.............................................................. viii

**INTRODUCTION**............................................................................ 1

**BACKGROUND** ............................................................................. 2

**RELIEF SOUGHT** .......................................................................... 7

**ISSUES PRESENTED**...................................................................... 7

**DISCUSSION** ................................................................................. 8

**CONCLUSION** ............................................................................. 18

# TABLE OF AUTHORITIES

**Cases**

*Bothmann v. Harrington,*
458 So. 2d 1163 (Fla. 3d D.C.A. 1984) ............................................................ 15

*Case v Smith,*
107 Mich 416; 65 NW 279 (1895) .................................................................... 11

*Cohen v. Beneficial Industrial Loan Corp.,*
337 U.S. 541 (1949) ......................................................................................... 16

*Compania Mexicana De Aviacion, S.A. v. U.S. Dist. Court for Cent. Dist. of California,*
859 F.2d 1354 (9th Cir. 1988) .......................................................................... 16

*Cosby v American Media, Inc,*
197 F Supp 3d 735 (U.S.D.C. Pa. 2016) ........................................................... 12

*Duncan v. Merrill Lynch, Pierce, Fenner & Smith,*
646 F.2d 1020 (5th Cir.) .................................................................................... 7

*Firestone Tire & Rubber Co. v. Risjord,*
449 U.S. 368 (1981) ......................................................................................... 17

*Fomby-Denson v Dep't of the Army,*
247 F3d 1366 (Fed. Cir. 2001) .......................................................................... 12

*Fox v. Ritz-Carlton Hotel Co., LLC,*
No. 17-CV-24284, 2023 U.S. Dist. LEXIS 63845 (S.D. Fla. Mar. 8, 2023) ................ 7

*FTC v World Wide Factors, Ltd,*
882 F2d 344 (9th Cir. 1989) .............................................................................. 6

*FTC v. Noland,*
475 F. Supp. 3d 992 (D. Ariz. 2020) .................................................................. 8

*In re BellSouth Corp.,*
334 F.3d 941 (11th Cir. 2003) ........................................................................... 7

*In re Cement Antitrust Litigation,*
673 F.2d 1020 (9th Cir. 1981) ........................................................................... 17

*In re Marvel,*
251 B.R. 869 (N.D. Cal. 2000) .................................................................... 1, 14, 16

*King v. Whitmer,*
71 F.4th 511 (6th Cir. 2023) .............................................................................. 13

*Lachman v Sperry-Sun Well Surveying Co,*
457 F2d 850 (CA 10, 1972) ................................................................................ 12

*McCuin v. Tex. Power & Light Co.,*
714 F.2d 1255 (5th Cir. 1983) ............................................................................. 7

*Optyl Eyewear Fashion Int'l Corp. v. Style Cos.,*
760 F.2d 1045 (9th Cir. 1985) ....................................................................... 1, 14

*Peer v. Lewis,*
571 F. App'x 840 (11th Cir. 2014) ...................................................................... 15

*Perkins Coie LLP v United States DOJ,*
___F Supp 3d___; 2025 U.S. Dist. LEXIS 84475 (DDC, May 2, 2025) ...................... 6

*Potashnick v. Port City Construction Co.,*
609 F.2d 1101 (5th Cir. 1980) ............................................................................. 8

*Pottinger v. Miami,*
810 F. Supp. 1551 (S.D. Fla. 1992) ...................................................................... 15

*Rivera v SVRC Indus,*
338 Mich App 663; 980 NW2d 777 (2021) ......................................................... 12

*Rodrigues v. Cnty. of Haw.,*
No. 20-15097, 2021 U.S. App. LEXIS 27533 (9th Cir. Sep. 14, 2021) ...................... 1

*Schiessle v. Stephens,*
717 F.2d 417 (7th Cir. 1983) ......................................................................... 1, 14

*Smart Comm's Holding, Inc. v. Global Tel-Link Corp.,*
590 F. Supp. 3d 758 (M.D. Pa. 2022) .................................................................... 7

*Visa U.S.A. v. First Data Corp.,*
241 F. Supp. 2d 1100 (N.D. Cal. 2003) ............................................................ 1, 14

ix

**Statutes**

18 U.S.C. § 1512 ................................................................................................ 10

MCL 750.149 ..........................................................................................10, 11, 12

**Constitutional Provisions**

U.S. Const., amend. V ...................................................................................... 6, 8

## INTRODUCTION

Mandamus relief is extraordinary. Everything about District Court's order that is the subject of this Petition is just that. For *no* legitimate reason, much less one supported by the appropriate strictly construed and rarely applied standard, the District Court has disqualified two expert trial attorneys who are in good standing from representing Defendant, Dr. Patrick Byrne, in this defamation case in which Plaintiff is seeking tens of millions of dollars.[1] This was, of course, against the wishes of Defendant, who has the constitutional right to counsel of his choice and who wishes to be represented by these two highly qualified and competent attorneys.

Defendant and his attorneys were prepared to go to trial. Plaintiff's counsel objected to the appearance of Petitioner Lambert to represent Defendant on the day of trial, and Defendant did not seek an adjournment. It is well known, and Plaintiff and his counsel likely know, that Petitioner Lambert is the premier attorney with knowledge about Defendant's work and his status and role and work as a national asset investigating government corruption, including that involving Plaintiff, Hunter Biden, and Attorney Lambert is also intimately familiar with Plaintiff Hunter Biden's laptop and the evidence of his involvement with foreign and corrupt business dealings against the interest and compromising the security of the United States of America.

---

[1] Motions to disqualify counsel are "subjected to particularly strict judicial scrutiny." *Optyl Eyewear Fashion Int'l Corp. v. Style Cos.*, 760 F.2d 1045, 1050 (9th Cir. 1985). Therefore, "disqualification is a 'drastic measure which courts should hesitate to impose except when absolutely necessary.'" See also, *Visa U.S.A. v. First Data Corp.*, 241 F. Supp. 2d 1100, 1104 (N.D. Cal. 2003), quoting *Schiessle v. Stephens*, 717 F.2d 417, 420 (7th Cir. 1983). Therefore, the party seeking disqualification "carries a heavy burden and must satisfy a high standard of proof because of the potential for abuse." *Id.*, quoting *In re Marvel*, 251 B.R. 869, 871 (N.D. Cal. 2000). A motion for disqualification "should not be decided on the basis of general and conclusory allegations," but rather "should be supported by substantial evidence." *Id.*

Preemptive challenges against attorneys seeking to appear and practice in a particular case are viewed with great scrutiny because they are generally executed to achieve an ulterior purpose. Here, the Plaintiff's counsel objected to the appearance of two attorneys who have extraordinary skill, as well as intricate knowledge of the facts and circumstances underlying the Plaintiff's defamation claims and their client's defense. More importantly, Plaintiff's strategy and the motives behind this baseless disqualification effort, is to keep the truth from being told. Of course, the truth is an absolute defense in a defamation case.[2]

No other lawyers in the world know more about the facts, and the truth, underlying the Plaintiff's claims against Dr. Byrne than the two attorneys that have been wrongfully disqualified and who are now unable to represent their client, Dr. Byrne, whose constitutional rights have been violated by the District Court's unjust ruling.

The Petitioners therefore move this Court to grant their petition and order the District Court to abide by the proper and ordinary standards. As in the majority of cases, the only proper thing to do is to recognize the Petitioners' constitutional right to counsel of his choice (in this instance Petitioners Peter Ticktin and Stefanie Lambert).

## BACKGROUND

This defamation case was filed November 8, 2023, and was originally scheduled for trial on July 29, 2025. The Defendant, Dr. Byrne retained various lawyers, appointing and terminating

---

[2] See, e.g., *Rodrigues v. Cnty. of Haw.*, No. 20-15097, 2021 U.S. App. LEXIS 27533, at *6 (9th Cir. Sep. 14, 2021).

2

attorneys Nabil Abu-Assan, Douglas P. Roy, Daniel Corren, Michael Smith, Scott James Street, and John Howard. ECF Nos. 17, 18, 19, 24, 33, 34, 68, and 74. Dr. Byrne also retained the Petitioner, Peter Ticktin, during this period, though, as explained below, attorney Ticktin's application to appear pro hac vice was later, retroactively denied. ECF Nos. 278, 307.

From September 17, 2024, until trial, through most pre-trial proceedings, Dr. Byrne's lead trial attorney was Michael Murphy. See ECF No. 68. However, Dr. Byrne's long-time attorney and adviser, Petitioner, Stefanie Lambert, provided a direct consulting role to and liaison between Attorney Murphy and Dr. Byrne.

When the time for the trial came, Attorney Murphy began to act strangely, exhibiting furtive behavior and evading the questions posed to him by Dr. Byrne and Attorney Lambert about the proceedings. Dr. Byrne then fired Attorney Murphy. On the morning of trial, Dr. Byrne terminated Mr. Murphy after it was discovered that he misled Dr. Byrne, Attorney Lambert, and others about the nature of the case and made concerning statements to them that he had not previously disclosed. In addition to other concerns that Attorney Lambert and Dr. Byrne had at the time the trial was approaching, Attorney Murphy's assistant attorney showed up on the morning of trial wearing dirty tennis shoes and a pro-Palestinian pin on her lapel. The allegations in the instant case to be litigated in the instant case involve allegations concerning the country of Iran, and the appearance of Attorney Murphy's assistant before the jury on behalf of Dr. Byrne was a final element causing Dr. Byrne and his advisers to doubt the motives, intentions, and/or competence of Attorney Murphy. Attorney Murphy in his update on trial status had recommended that Dr. Byrne not appear at trial, even though Dr. Byrne desired to do so up to that point. Attorney Murphy also assured that if he was not going to come to trial, that Dr. Byrne's video depositions

3

would be used as his testimony to the jury. Not only did Attorney Murphy mislead Dr. Byrne concerning this representation, but Murphy never prepared these video depositions, never prepared parallel transcripts, and never had these items prepared as exhibits or testimony. When confronted about this, Murphy claimed that it was a question of costs, but he had already been paid approximately $500,000. So, Murphy's claim was false. Murphy's negligence in failing to have this video testimony and the transcripts prepared and his other representations that they would suffice was not discovered until the day of trial. Attorney Murphy also did not have exhibits or a witness list prepared. He said he had made a deal with Plaintiff's counsel to share the costs of exhibits, but when he then gave Attorney Lambert exhibit books of hundreds of exhibits, all of which were for Plaintiff's side, there were only three audio recordings that Dr. Byrne intended to introduce and no documents. Murphy misused Dr. Byrne's money for Plaintiff to prepare these volumes of hundreds of exhibits for Plaintiff.

As Lambert had been on the case the entire time, she immediately flew in and had Eric Neff and Tom Yu flown in and they were ready to go to trial without any adjournment. ECF Nos. 290, 291, 292. Attorney Murphy claimed that he was unable to upload Attorney Lambert's pro hac vice motion and it was not until Tom Yu was representing Dr. Byrne that this was accomplished with no problem.

Given this sudden turn of events, Petitioner Lambert filed a motion to appear pro hac vice to represent Dr. Byrne at the latter's request. Yet, despite his express wishes, the District Court refused to allow Ms. Lambert to appear pro hac vice, finding that her recent history of alleged unethical conduct was sufficient, even though Ms. Lambert has not been disciplined and is in good

4

standing in the State of Michigan, where she is licensed to practice law. ECF No. 295. The finding by the District of Columbia district court is currently on appeal.

The Petitioner, Attorney Lambert, who represented Dr. Byrne in other matters, was advising and providing guidance per instruction to Dr. Byrne in the course of the proceedings and in discussing overall strategy of Dr. Byrne's legal affairs, including other cases in which she is involved. Leading up to trial, Attorney Murphy represented to Dr. Byrne that the case would be for a nominal amount of damages ($1.00), and failed to advise him that he would not be able to defend himself by presenting all evidence of the truth and foundation for Dr. Byrne's alleged defamatory statements.

Thereafter, on July 24, 2025, the Petitioner, Attorney Peter Ticktin, licensed and in good standing in the State of Florida, and admitted to practice before the United States Supreme Court, and this Court, among other federal courts, filed a motion and was granted admission *pro hac vice* by the District Court. The Petitioner, Attorney Stefanie Lambert is licensed and in good standing in the State of Michigan. She also filed a motion to appear pro hac vice at Dr. Byrne's request. Petitioner Lambert is the nation's foremost expert on many of the facts and circumstances of the underlying issues in these and other cases in which Dr. Byrne is involved.

On July 29, 2025, the District Court denied Petitioner Attorney Lambert's motion to appear pro hac vice. On July 30, 2025, the District Court then entered an order stating that Dr. Byrne could engage in no further discovery. ECF 307.

The Plaintiff below filed an "ex parte" motion for reconsideration of Petitioner Ticktin's admission, and on August 5, 2025, the District Court issued an "in chambers" order reversing the admission on the basis of what the District Court found to be alleged unethical conduct more than

15 years prior, in Florida for which Mr. Ticktin had been sanctioned and suspended for 91 days and 15 days, but thereafter reinstated in the Florida courts, including the U.S. District Courts in the three districts of Florida, and has remained in practice and in good standing since. The District Court then cited to a sanction that had been imposed by a district court in Florida, which concluded that Mr. Ticktin had filed frivolous claims. Although there was a Rule 11 sanction, that entire dismissal and the sanction, which was mainly imposed on other attorneys, is under appeal to the Eleventh Circuit Court of Appeals. Then, the District Court "concluded" that Petitioner Ticktin had prioritized political objectives over his representational roles. The District Court made the determination on the basis of another district court's conclusions that because he had pursued frivolous legal claims alongside meritorious claims in an effort to make a political statement and for fundraising, he should not be admitted pro hac vice to represent Dr. Byrne in these proceedings.

The District Court concluded that on the basis of these past incidents, Dr. Byrne's counsel of choice, Mr. Ticktin, could not appear pro hac vice and was disqualified. In this "in chambers" order, the District Court granted Plaintiff's motion for reconsideration of the initial decision to admit Mr. Ticktin to represent Dr. Byrne.

The District Court also concluded that Attorney Ticktin failed to appear after being admitted. However, Attorney Ticktin had an previously scheduled and unalterable scheduling conflict in federal court in Wisconsin where he was required to appear after a case failed to settle. Attorney Ticktin secured a victory for his client in those proceedings, but the Distsrict Court here failed to even consider this ordinary occurrence where an attorney has an unresolvable scheduling conflict and must be in another federal court many miles away.

6

At a hearing, on July 30, 2025, Dr. Byrne's prior counsel requested a continuance to allow Dr. Byrne time to retain counsel of his choice. The District Court allowed a continuance until October 14, 2025, so that the Defendant could retain counsel. *Id*. However, other attorneys familiar with the subject matter involving the Plaintiff Hunter Biden's laptop were not to be found. The District Court has disallowed through disqualification Dr. Byrne's retention of Petitioners, Attorneys Ticktin and Lambert.

Dr. Byrne is now unrepresented and the District Court has allowed the proceedings to continue. On September 13, Plaintiff filed an application for issuance of a bench warrant against Dr. Byrne, despite the continuance to October 14, 2025 and his own objections and disruptions of Dr. Byrne to prevent him from having his counsel of choice.

### RELIEF SOUGHT

The Petitioners respectfully request that this Court vacate the District Court's order, which unconstitutionally denied the Defendant to his counsel of choice by its disqualification (one retroactively) of two expert and competent attorneys, both of whom are in good standing.

The Petitioners also respectfully request that this Court issue an immediate stay of all proceedings in the district court, including discovery, pending determination of this Petition and, if the Petition is granted, until such time that this matter is resolved by this Court.

### ISSUES PRESENTED

I. DOES IT VIOLATE A LITIGANT'S CONSTITUTIONAL RIGHT TO COUNSEL OF CHOICE FOR A DISTRICT COURT TO DENY A LITIGANT'S REQUEST FOR A SPEIFIC ATTORNEY TO APPEAR PRO HAC VICE WHERE THE ATTORNEY HAS NOT BEEN DISBARRED, AND HAS NOT EVEN BEEN DISCIPLINED, AND THUS DOES NOT DE FACTO MEET THE MIMINUM REQUIREMENT FOR DISQUALIFICATION SUFFICIENT TO BE DENIED PRO HAC VICE ADMISSION?

7

II.   DOES IT VIOLATE PETITIONER'S CONSTITUTIONAL RIGHTS TO BE DENIED PRO HAC VICE ADMISSION BY A DISTRICT COURT WHERE THE STRICTLY APPLIED STANDARD FOR DISQUALIFICATION AND/OR DENIAL OF ADMISSION IS THAT THERE MUST BE FACTS SUFFICIENT TO JUSTIFY DISBARMENT, AND WHERE THERE IS NO SHOWING OF SUCH FACTS, AND EVEN MORE, NO DISCIPLINARY ACTION BASED ON SUCH FACTS, MAKING THE DISTRICT COURT'S JUDGE'S DECISION ONE OF PURE SPECULATION AND CONJECTURE?

## DISCUSSION

The choice of counsel and the right to representation are deeply rooted in constitutional protections under the First Amendment and the Fifth Amendment Due Process Clause. *FTC v World Wide Factors, Ltd*, 882 F2d 344 (9th Cir. 1989). These rights are often examined in the context of criminal and civil proceedings, as well as in administrative and procedural settings, where the ability to select counsel of choice intersects with broader constitutional guarantees such as freedom of association, access to justice, and procedural fairness. *FTC, supra*. See also, *Perkins Coie LLP v United States DOJ*, ___F Supp 3d___; 2025 U.S. Dist. LEXIS 84475 (DDC, May 2, 2025) (litigants cannot achieve disqualification of counsel for strategic reasons and to avoid the inevitable outcome that sophisticated and expert counsel will bring to the opposing party's cause – fear of the truth and the outcome of a case cannot be avoided by the tactical and ethically questionable use of disqualification or worse, infringing on the fundamental constitutional freedoms of association, choice, speech, and rights to representation in all legal proceedings in the United States of America).  Due process will almost always outweigh the opposition's fear mongering and attempts to avoid defeat by targeting and removing competent counsel from legal proceedings. *Id*. Such methods harken back to the dark days of the civil rights movement where lawyers and litigants were routinely precluded from appearing and being represented, respectively,

8

on the basis of dubious and targeted procedural attacks on their character and fitness. *Id*. Thus, choice of counsel has become one of significant concern and the right to be represented by counsel of one's choice is protected under the Fifth Amendment Due Process Clause for all civil litigants. *Id*. See also *Fox v. Ritz-Carlton Hotel Co., LLC*, No. 17-CV-24284-SINGHAL/REID, 2023 U.S. Dist. LEXIS 63845, at *5 (S.D. Fla. Mar. 8, 2023), citing *In re BellSouth Corp.*, 334 F.3d 941, 955 (11th Cir. 2003) and *Smart Comm's Holding, Inc. v. Global Tel-Link Corp.*, 590 F. Supp. 3d 758, 763 (M.D. Pa. 2022) (noting that the Fifth Amendment "guarantees civil litigants the right to retained counsel, which ordinarily includes the right to be represented by counsel of their choice"). "The right to counsel in civil cases is…fundamental and springs from both statutory authority and from the constitutional right to due process of law." *McCuin v. Tex. Power & Light Co.*, 714 F.2d 1255, 1262-63 (5th Cir. 1983), citing *Duncan v. Merrill Lynch, Pierce, Fenner & Smith*, 646 F.2d 1020, 1025 n. 6 (5th Cir.), cert. denied, 454 U.S. 895, 102 S. Ct. 394, 70 L. Ed. 2d 211 (1981).

In considering the constitutional concerns raised by a party's attempt to exclude another party from having their counsel of choice represent them at legal proceedings, the Court is cautioned to balance the alleged "harm" to the movant against the harm that will be caused by the complete exclusion of retained expert counsel.

Here, the Plaintiff has sought, and succeeded, in preventing the leading experts and legal counsel from defending Dr. Byrne where critical information and truth of facts are determinative and dispositive as to the Plaintiff's defamation claim. Thus, Dr. Byrne's defense is directly impacted by the Court's decision to exclude the Petitioners.

The District Court also failed to articulate what harm or other prejudice would result to the Plaintiff, or to the pursuit of justice in general, in refusing to allow the Petitioners to represent Dr.

9

Byrne. The District Court's conclusions are based on pure speculation and conjecture – they have not and will not come to pass because the District Court retains control and jurisdiction over the process and can alter the conduct of the parties and take measured corrective actions as the proceedings progress.  There is literally *no harm* that can occur to the Plaintiff under this scenario, but there is *great* and *irreversible harm and prejudice* to the Defendant by the District Court's disqualification of the Petitioners. The latter is objective harm and constitutionally-based prejudice inflicted directly on the Defendant, Dr. Byrne. The Petitioners must be allowed to participate to the maximum extent possible, so that they can be consulted, provide advice to, and represent their client.

Any discussion concerning the exclusion of counsel from a specific proceeding must begin with the principle, grounded in the Due Process Clause of the Fifth Amendment, that a party has the right to be represented by counsel of his choice. *FTC v. Noland*, 475 F. Supp. 3d 992, 996 (D. Ariz. 2020). See also, *Potashnick v. Port City Construction Co.*, 609 F.2d 1101, 1117-18 (5th Cir. 1980).  "[I]f a court were arbitrarily to refuse to hear a party by counsel, employed by and appearing for him, it reasonably may not be doubted that such a refusal would be the denial of a hearing, and, therefore, of due process in the constitutional sense."  *Id.* (internal citations and quotations omitted). Thus, there are less objectionable and constitutionally suspect means of controlling a legal proceeding than excluding counsel altogether.

Dr. Byrne urges this Court to issue the Writ of Mandamus and to order the District Court to reverse its order and allow the Petitioners full admission for these proceedings to represent him, which would significantly reduce the costs and the needs and resources to associate further and

10

additional counsel (with all that requires in terms of bringing another attorney up to speed on the facts and procedural posture of the case).

Furthermore, the District Court's decision to exclude and disqualify the Petitioner Lambert was based on conclusory decisions of another court regarding the District of Columbia proceedings. The District Court in the District of Columbia failed to clarify that the Petitioner did not in fact disclose or otherwise divulge protected information once it imposed restrictions on her. It was often recited that the Petitioner went on podcasts and disclosed additional information, but this is simply not the case. Her quoted and recorded statements clearly indicated that she was subject to and bound by the District Court's order and she therefore did not disclose any information. In fact, she merely referred to a criminal investigation that had already been underway years before the District Court proceedings in the District of Columbia.

Attorney Lambert is a practicing attorney with clients in Michigan and has represented criminal defendants and the Department of Justice, even under President Biden, had never objected to or took issue with Lambert's representation defending cases against the Department of Justice. It is only in cases involving the fraud and election matters that have turned into vehicles for weaponization of the justice system to prevent attorneys, particularly Attorney Lambert, from appearing in cases.

Moreover, contrary to the District Court's references to the interviews and podcasts in which the Petitioner Lambert participated, there were no statements that violated the protective order, or the status quo order in the proceedings before the District of Columbia. Indeed, the references to those orders were only made where Petitioner confirmed publicly that she was not able to divulge certain information. Everything that was discussed by the Petitioner dealt with law

11

and the application of the law, not the facts or any violation of the protective order. The District of Columbia district court's findings are currently pending on appeal before the United States Supreme Court.

The Plaintiff here has benefited from the misstatements of fact in the District of Columbia proceedings, twice removed because another District Court has rendered its own subjective interpretation of those proceedings. The Petitioner Lambert has not even been given the opportunity to rebut those allegations in the instant proceedings because the District Court simply took the prior findings as fact. The reality is that the Plaintiff's motion was based on the District Court's erroneous misstatements of fact.

Also, having dispelled the allegation that she violated the protective order after the District Court imposed additional restrictions, the legal argument that the Petitioner had an ethical and legal obligation to follow the law in Michigan and report crimes to law enforcement has also been misstated. The Petitioner, an experienced litigation attorney in the underlying subject matter and as someone who served as a prosecutor for a decade and then as a criminal defense attorney, brought to the attention of law enforcement significant criminal wrongdoing on the part of Dominion, its agents, employees, and contractors. Under both Michigan law and federal law, it is required to report criminal conduct to authorities. See MCL 750.149 (making it a crime for one with knowledge to conceal commission of a crime) and 18 U.S.C. § 1512 (making it unlawful to penalize or otherwise punish one for reporting criminal activity). Even if disqualification stands in the District of Columbia proceedings, there is no sanctioning or disciplinary ruling. Thus, the District Court had no basis to conclude that the Petitioner's actions and conduct warranted disqualification or denial of her application for admission.

12

While the District Court at first sided with the Plaintiff's superficial argument, the reality is that there is more to the requirement to disclose criminal activity in the State of Michigan, and no "agreement," even a court order, can prohibit what is required by the criminal law and an obligation on the part of a practicing attorney. The Petitioner, who lives and works in Michigan, was required by Michigan law to disclose suspected criminal activity to law enforcement. See MCL 750.149. This provision, entitled "Compounding or concealing offense; Penalty" provides:

> Any person having knowledge of the commission of any offense punishable with death, or by imprisonment in the state prison, who shall take any money, or any gratuity or reward, or any engagement therefor, upon an agreement or understanding, express or implied, to compound or conceal such offense, or not to prosecute therefor, or not to give evidence thereof, shall, when such offense of which he or she has knowledge was punishable with death, or imprisonment in the state prison for life, is guilty of a felony; and where the offense, of which he or she so had knowledge, was punishable in any other manner, he or she is guilty of a misdemeanor punishable by imprisonment for not more than 1 year or a fine of not more than $1,000.00.

Furthermore, one cannot draft or propose a protective order or contract that would ever prohibit the disclosure of a crime to authorities. Such agreements would be considered void and unenforceable as they are contrary to public policy. If it were otherwise, any corporation or entity could conceal crimes or enter into such sweeping protective orders to avoid criminal investigation and prosecution. The Michigan Supreme Court has clearly stated that any contract whose consideration is to conceal a crime or stifle a prosecution is repugnant to public policy and therefore void. See, e.g., *Case v Smith*, 107 Mich 416; 65 NW 279 (1895). Additionally, the Michigan Court of Appeals has reinforced this principle, noting that contracts intended to conceal a crime or prevent prosecution violate public policy and are void.

13

Moreover, MCL 750.149, already noted, also criminalizes agreements to conceal an offense or not to prosecute, reflecting a strong public policy against such contracts. See also, *Rivera v SVRC Indus*, 338 Mich App 663; 980 NW2d 777 (2021). Therefore, courts have consistently held that agreements construed to bar a party from reporting another party's alleged misconduct to law enforcement authorities for investigation and possible prosecution violate public policy and are therefore unenforceable. See, e.g., *Fomby-Denson v Dep't of the Army*, 247 F3d 1366 (Fed. Cir. 2001), *Cosby v American Media, Inc*, 197 F Supp 3d 735 (U.S.D.C. Pa. 2016), and *Lachman v Sperry-Sun Well Surveying Co*, 457 F2d 850 (CA 10, 1972).

In *Fomby*, *supra*, the federal circuit emphasized that enforcing such agreements would violate a well-defined and dominant public policy, citing multiple precedents that support the principle that agreements to conceal information relevant to the commission of a crime are not favored by the law. Accord *Cosby*, *supra*. Similarly, in *Lachman*, *supra*, the Tenth Circuit held that it is public policy to encourage the disclosure of criminal activity and declined to enforce a nondisclosure agreement that would have prevented the reporting of a possible crime. Accord *Fomby*, *supra*. Additionally, the Restatement (First) of Contracts and other secondary authorities also support the view that contracts or agreements aimed at concealing or compounding a crime are illegal and contrary to public policy. *Cosby*, *supra*. Therefore, any contract or agreement that by design seeks to prohibit the disclosure of a crime to authorities would be unenforceable under both Michigan and federal law. Furthermore, as an aside, not even attorney-client privilege would prevent the disclosure of suspected criminal activity. Petitioner Attorney Lambert had not only a duty, but an absolute right to report the suspected criminal activity to law enforcement in Michigan.

14

Finally, the Petitioner remains in good standing in the State of Michigan, has not been sanctioned, and in fact prevailed in those cases that the Plaintiff misrepresents and in which she was attempted to be sanctioned by lawyers and officials weaponizing the justice system and using it to prevent Petitioner Lambert from defending her clients and seeking the truth. See *King v. Whitmer*, 71 F.4th 511, 531 (6th Cir. 2023).

With respect to Petitioner Ticktin, the District Court used prior sanctions and warnings against Petitioner Ticktin, all of which occurred during the course of contentious litigation in the District Court and trial court proceedings referred to in Florida. Aside from the District Court's fear mongering about these past incidents, it had no basis to conclude that the strict standard to exclude and disqualify a litigant's counsel of choice (to essentially infringe upon a recognized constitutional right) has been met.

Mr. Ticktin was disciplined for a conflict of interest (91-day suspension) and for paying a referral fee to an out-of-state attorney who referred a Florida case (15-day suspension). The conflict of interest was for advising investors in 2002 that his then client no longer had any interest in a company, the Pony Express. Mr. Ticktin's honesty in the events and in the bar proceedings was a mitigating factor. The 15-day suspension for paying a referral fee to a non-Florida lawyer was accepted in 2010, as the suspension overlapped the 91-day suspension while Mr. Ticktin was going through the reinstatement process. Neither of these would indicate any reason Mr. Ticktin should not be permitted to practice in any court.

Moreover, the Rule 11 sanction was for filing the Complaint by Donald J. Trump against those responsible for the Russian Collusion claims. The trial judge found that there was no truth to the facts alleged, notwithstanding that most of the averments in the 185-page Complaint were

15

given sources of the information in footnotes, and that there was to have been a presumption that the facts alleged in the Complaint were true. In any event, those issues are pending on appeal. Mr. Ticktin was more recently sanctioned pursuant to Rule 11 for not having done a pre-suit claims analysis in a patent infringement case. That decision is now before the trial judge on a Rule 59 Motion for Rehearing.

Mr. Ticktin has been a practicing attorney for more than 50 years, and he is a seasoned trial lawyer, highly respected in the Courts in which he regularly appears.

Motions to disqualify counsel are "subjected to particularly strict judicial scrutiny." *Optyl Eyewear Fashion Int'l Corp. v. Style Cos.*, 760 F.2d 1045, 1050 (9th Cir. 1985). Therefore, "disqualification is a 'drastic measure which courts should hesitate to impose except when absolutely necessary.'" See also, *Visa U.S.A. v. First Data Corp.*, 241 F. Supp. 2d 1100, 1104 (N.D. Cal. 2003), quoting *Schiessle v. Stephens*, 717 F.2d 417, 420 (7th Cir. 1983). Therefore, the party seeking disqualification "carries a heavy burden and must satisfy a high standard of proof because of the potential for abuse." *Id*., quoting *In re Marvel*, 251 B.R. 869, 871 (N.D. Cal. 2000). A motion for disqualification "should not be decided on the basis of general and conclusory allegations," but rather "should be supported by *substantial* evidence." *Id*. (emphasis added).

The Plaintiff's efforts here amount merely to a preliminarily successful attempt to skew the District Court's perspective to prevent Dr. Byrne from having his chosen counsel represent him – this is a textbook example of abuse of process – attempting to achieve an ulterior motive in the exercise of a perverted use of the court's processes. In the case at bar, the Plaintiff has sought to disqualify Dr. Byrne's counsel because they do not want the Petitioners representing Dr. Byrne in this defamation case. That is not a sound or legitimate basis for disqualification. This extraordinary

16

and disproportionate use of process was perverted in an attempt to disrupt the proceedings (stop Petitioners from representing Dr. Byrne) and to achieve an ulterior and unlawful motive not recognized by the law. *Peer v. Lewis*, 571 F. App'x 840, 845-46 (11th Cir. 2014) (the district courts have inherent authority to stamp out attorney's use of politically motivated and weaponized filings that seek to achieve an ulterior result than that for which the particular process is being advanced). See also, *Pottinger v. Miami*, 810 F. Supp. 1551, 1566 (S.D. Fla. 1992) (citing *Bothmann v. Harrington*, 458 So. 2d 1163, 1169 (Fla. 3d DCA 1984) and stating abuse of process arises "when there has been perversion of court process to accomplish end which process was not intended by law  to accomplish, or which compels party to do some collateral thing he could not legally be compelled to do."). It is an abuse of process to file a motion for the sole purpose of preventing a litigant from being represented by competent counsel. Abuse of process includes the filing of frivolous motions which contain misrepresentations, upset the court's schedule, and attempt to blindside litigants and their counsel and disrupt the proceeding and ultimately derail the litigant's defense. This is generally sanctionable conduct and the court, under its inherent power, can sua sponte decide that an abuse of process has occurred. *Peer*, *supra*.

Petitioner Lambert was disqualified as counsel for following her legal and ethical obligations to report suspected criminal activity to law enforcement which was revealed during discovery. The Petitioner has not been disbarred or subjected to disciplinary proceedings concerning the facts which formed the basis of the District Court's decision to exclude her from being admitted. This is a de facto abuse of the District Court's discretion as there is no basis to support the standard applied in this circuit.

17

Petitioner Ticktin's past conduct that occurred during unrelated litigation cannot also not form the basis of disqualification without more. In regard to the District Court's decision to disqualify him, there is nothing but speculation and conjecture concerning Mr. Ticktin's future conduct and behavior. This is de facto insufficient. A motion for disqualification "should not be decided on the basis of general and conclusory allegations," but rather "should be supported by *substantial* evidence." *In re Marvel*, 251 B.R. 869, 871 (N.D. Cal. 2000) (emphasis added).

The Petitioners are experienced litigation attorneys in the underlying subject matter. They are in good standing in their own jurisdictions.

## CONCLUSION

Dr. Byrne retained Petitioners as special counsel because they are experienced attorneys and experts in their field, and also because they have an unparalleled command of the facts and circumstances underlying Plaintiff's defamation claims. Dr. Byrne has retained the Petitioners in other matters as well because of their competence and expertise.

Therefore, the Petitioners respectfully request that this Court issue a Writ of Mandamus requiring the District Court to reverse its decision denying their motions for special admission to appear and practice pro hac vice in the District Court proceedings in the underlying case.

Should this Court conclude that mandamus should not issue, the Petitioners respectfully request this Petition be treated as an appeal of the District Court's order under *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949) ("Cohen"). This Court has converted petitions for a Writ of Mandamus into appeals in the past. See, e.g., *Compania Mexicana De Aviacion, S.A. v. U.S. Dist. Court for Cent. Dist. of California*, 859 F.2d 1354, 1357 (9th Cir. 1988) ("Although mandamus normally may not substitute for an appeal, [the Ninth Circuit Court of Appeals has]

18

sometimes construed petitions for writ of mandamus as notices of appeal." (citing cases). Moreover, there is meaningful overlap in the requirements for a Writ of Mandamus and those of a *Cohen* appeal.

To qualify for immediate appeal under Cohen, (1) "the order must conclusively determine the disputed question," (2) "resolve an important issue completely separate from the merits of the action," and (3) "be effectively unreviewable on appeal from a final judgment." *In re Cement Antitrust Litigation*, 673 F.2d 1020, 1022 (9th Cir. 1981) (quoting *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 375 (1981)). This standard is easily satisfied here.

First, the disputed question is conclusively resolved by the District Court's decision. The Petitioners have been disqualified and are excluded from representing Dr. Byrne. This decision is "final" for all practical purposes. It is and will continue to irreversibly affect the remainder of the proceeding. Dr. Byrne was unequivocally deprived of his constitutional rights the moment the decision was made by the District Court to exclude Petitioners from representing him, and his rights will continue to be violated so long as he is not provided with his recognized Due Process right to counsel of his choice.

Second, the District Court's conclusive resolution creates a jurisdictional issue which is distinct from the merits of the underlying defamation case. The erroneous ruling has already emboldened the Plaintiff because he has requested a bench warrant be issued against Dr. Byrne, who is currently unrepresented, even in light of the District Court's continuance until October 14, 2025. Moreover, until the question of the propriety of the District Court's ruling is resolved, the status quo of a continuing constitutional violation of Dr. Byrne's rights will remain. There is no

19

functional or justifiable reason to wait until the end of this case to consider an appeal of the District Courts disqualification of Petitioners.

For all of the foregoing reasons, Petitioners respectfully request that this Court grant their petition for a writ of mandamus, or in the alternative, grant Petitioners' Cohen appeal; direct the District Court to vacate its orders denying pro hac vice admission to Petitioners; and issue a stay of all proceedings in the District Court pending the determination of this Petition and, if the Petition is granted, until such time that the Appeal is decided.

Respectfully submitted,

*/s/ Roger I. Roots*
Roger I. Roots, Esquire
The Ticktin Law Group
Counsel for Petitioners
270 SW Natura Ave.
Deerfield Beach, FL 33441
Phone: (561) 232-2222
Serv512@legalbrains.com

20

## STATEMENT OF RELATED CASES

There are no related cases within the meaning of Circuit Rule 28-2.6.

**CERTIFICATE OF COMPLIANCE**

I am the attorney for Petitioners. This brief contains 5,965 words in compliance with the word limit set forth in Fed. R. App. P. 21(d)(1), excluding the items exempted by Fed. R. App. P. 21(a)(2)(C) and Fed. R. App. P. 32(f). The brief's type and size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

Respectfully submitted,

*/s/ Roger I. Roots*
Roger I. Roots, Esquire
The Ticktin Law Group
Counsel for Petitioners
270 SW Natura Ave.
Deerfield Beach, FL 33441
Phone: (561) 232-2222
Serv512@legalbrains.com

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on September 15, 2025.

I further certify that on September 15, 2025, a notice of the filing of the foregoing (including a complete copy of the foregoing) will be filed in underlying proceeding in the United State District Court for the Central District of California in compliance with Federal Rule of Appellate Procedure 21(a)(1), and that all parties to the proceeding will be served with that notice through the district court's CM/ECF system.

In addition, a courtesy copy of the foregoing has been provided via e-mail and/or third-party commercial courier to the following counsel of record.

### Counsel for Plaintiff / Respondent:

- Bryan M Sullivan
  Early Sullivan Wright Gizer and McRae LLP
  6420 Wilshire Boulevard 17th Floor
  Los Angeles, CA 90048
  Phone: 323-301-4660
  Fax: 323-301-4676
  Email: bsullivan@earlysullivan.com

- Phillip D. Barber
  Richard A. Harpootlian, P.A.
  1410 Laurel Street
  Columbia, SC 29201
  Phone: 803-252-4848
  Email: pdb@harpootlianlaw.com
  *PRO HAC VICE*

- Richard A. Harpootlian
  Richard A. Harpootlian, P.A.
  1410 Laurel Street

23

Columbia, SC 29201
803-252-4848
Email: rah@harpootlianlaw.com
*PRO HAC VICE*

- Zachary Hansen
  Early Sullivan Wright Gizer and McRae LLP
  6420 Wilshire Boulevard 17th Floor
  Los Angeles, CA 90048
  323-301-4660
  Fax: 323-301-4676
  Email: zhansen@earlysullivan.com

**Counsel for Mediator:**

- Dennis James Landin
  ADR Services, Inc.
  1900 Avenue of the Stars, #200
  Los Angeles, CA 90067
  310-201-0010
  Email: judgelandin@adrservices.com

Respectfully submitted,

*/s/ Roger I. Roots*
Roger I. Roots, Esquire
The Ticktin Law Group
Counsel for Petitioners
270 SW Natura Ave.
Deerfield Beach, FL 33441
Phone: (561) 232-2222
Serv512@legalbrains.com

Date: September 15, 2025